# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 97-2698WA

———————

| | | |
|---|---|---|
| Dan Finley, doing business as | * | |
| E & F Enterprises; Rick Eby, doing | * | |
| business as E & F Enterprises, | * | |
| | * | |
| Appellees, | * | On Appeal from the |
| | * | United States District Court |
| v. | * | for the Western District |
| | * | of Arkansas. |
| | * | |
| River North Records, Inc., | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: January 16, 1998

Filed: June 23, 1998

———————

Before RICHARD S. ARNOLD,[1] Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit Judge, and SACHS,[2] District Judge.

———————

RICHARD S. ARNOLD, Chief Judge.

---

[1]The Hon. Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998. He has been succeeded by the Hon. Pasco M. Bowman II.

[2]The Hon. Howard F. Sachs, United States District Judge for the Western District of Missouri, sitting by designation.

E & F Enterprises, concert promoters, sued River North Records, a record company, and Entertainment Artists, a booking agency, for fraud related to representations of the defendants that certain performers would appear in a concert at the University of Arkansas. A jury found for E & F and awarded compensatory and punitive damages. On appeal, River North Records argues that the court did not have personal jurisdiction and that there was insufficient evidence to support the jury's verdict and award. We affirm.

I.

In 1993, Dan Finley and Rick Eby formed E & F Enterprises, a partnership, for the purpose of promoting music concerts. On September 12, 1995, Finley and Eby contracted with Entertainment Artists, Inc., a Nashville, Tennessee-based booking agent, to promote a concert featuring Peter Cetera, the former lead singer for the group "Chicago." The concert was to take place at the University of Arkansas's Barnhill Arena in Fayetteville, Arkansas on October 27, 1995. Before signing the contract, Finley and Eby discussed the concert with Dan Wojcik, President of Entertainment Artists. Wojcik told them that performer Crystal Bernard, star of the television show "Wings," the Don Henley Band, consisting of members who formerly played in the hit group the "Eagles," and singer Ronna Reeves would appear with Peter Cetera. Cetera and Bernard had recorded a duet, "Forever Tonight," which had reached the "Top 10" in the weeks preceding the concert date.

Cetera, Bernard, and Reeves were recording artists for River North Records, Inc. After the contract with Entertainment Artists was signed, Finley called Michelle Brown, Director of Publicity in River North's Nashville office, for promotional materials for the artists who would be appearing at the concert. She sent Finley a promotional package, which included a brochure, a photograph of Cetera and Bernard, Cetera's most recent album, and the music video of the Cetera and Bernard duet. Finley called Brown on other occasions to discuss the concert promotion. On or about October 19,

1995, Finley and Eby learned that Bernard would not be performing at the concert through a news report indicating that Bernard had never been consulted about a concert performance with Cetera. Moreover, they learned that the "Don Henley Band" did not exist; the name was presumably created to promote ticket sales to the Cetera show. Finley and Eby decided to cancel the concert.

E & F sued Entertainment Artists and River North for fraud in the District Court. River North moved to dismiss the case for lack of personal jurisdiction. The District Court[3] denied the motion. Entertainment Artists defaulted, but judgment was not entered because E & F wished to present evidence of damages at trial. The case was tried to a jury. At the close of E & F's case, River North moved for judgment as a matter of law on the ground that plaintiffs' evidence of liability and damages was insufficient. The Court denied the motion. The jury returned a verdict for E & F, awarding $85,182 in compensatory damages -- consisting of $15,182 in out-of-pocket costs and $70,000 in loss of future profits -- against River North and Entertainment Artists jointly and severally. The jury also assessed $10,000 in punitive damages against River North and $50,000 against Entertainment Artists. River North filed post-trial motions for judgment as a matter of law, or, in the alternative, for remittitur of damages or for a complete new trial. The Court denied the motions. River North appeals from the denial of the post-trial motions and from the denial of the motion to dismiss for lack of personal jurisdiction. We affirm.

II.

River North contends that the District Court erroneously denied its motion to dismiss for lack of personal jurisdiction. The District Court found River North subject to personal jurisdiction in Arkansas for two reasons. First, Michelle Brown sent

---

[3]The Hon. H. Franklin Waters, United States District Judge for the Western District of Arkansas.

promotional materials featuring Cetera and Bernard to E & F and discussed the concert promotion several times by phone with Finley and Gene Fitch, Assistant Director of Campus Activities at the University of Arkansas at Fayetteville. Finley alleged that in his conversations with Brown, she confirmed that Bernard, the Don Henley Band, and Reeves would all appear at the Fayetteville concert. The District Court stated that the phone and mail communication alone, without more, were insufficient to confer jurisdiction over River North, but that such contacts might be considered for purposes of determining whether the defendant purposefully availed itself of the privilege of doing business in Arkansas.

Second, the Court found it significant that although River North and E & F had not directly contracted for the concert promotion, River North had hired Entertainment Artists to contract with promoters such as E & F. The Court reasoned that

> RNR must work with 'booking agents' to do such work [concert promotion] for it. Once the tours are set up, RNR apparently participates to the extent it is needed to make the tour a success by providing promotional materials. As such, the acts of Entertainment Artists can be attributed to RNR for purposes of the personal jurisdiction analysis.

Appellant's Separate App. 43.

We agree with the District Court that personal jurisdiction over River North in an Arkansas federal court is consistent with both state and federal law. In Calder v. Jones, 465 U.S. 783 (1984), the Supreme Court considered a defamation case helpful to us here. In Calder, Shirley Jones, a professional entertainer residing and working in California, brought suit against two Florida residents for allegedly libelous statements they wrote and edited about her in the National Enquirer, a national magazine with its largest circulation in California. The defendants, contending that the article had been prepared entirely in Florida, asserted insufficient contacts with California for purposes

-4-

of personal jurisdiction. The California Court of Appeal held that a valid basis for jurisdiction existed, on the theory that the defendants intended to and did cause tortious injury to the plaintiff in California.

The United States Supreme Court accepted the California Court of Appeal's rationale that the defendants' tortious conduct subjected them to jurisdiction in California. The Supreme Court rejected the defendants' argument that, as employees, they had no control over, and therefore were not responsible for, their employer's sales in a distant state:

> [P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the state in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

465 U.S. at 789-90 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

In a trademark infringement case, this Court, relying on Calder, determined that personal jurisdiction was permissible over a non-resident defendant whose sportswear bearing a trademark-infringing label was ultimately sold in the forum state. Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384 (8th Cir. 1991). The defendant corporation argued that it had no contacts with the forum state, and that the

marketing of its products in that state resulted exclusively from the unilateral actions of others. We rejected this reasoning, stating:

> Although the defendant's lack of control over distribution of the product in the forum state may weigh against jurisdiction in a negligence action, that lack of control will not bar jurisdiction when the plaintiff has alleged an intentional tort. . . . [In Calder,] [t]he Supreme Court . . . approved an "effects" test that allows the assertion of personal jurisdiction over non-resident defendants whose acts "are performed for the very purpose of having their consequences felt in the forum state."

946 F.2d at 1390-91 (citations omitted).

River North is amenable to personal jurisdiction in Arkansas under the reasoning set forth in Calder and developed in Dakota Industries. E & F alleged, and a jury found, that River North committed fraud in inducing E & F to promote the concert in Fayetteville by misrepresenting that Bernard and the Don Henley Band would appear with Cetera. Michelle Brown sent promotional materials into the state, knowing that they would be used commercially to promote the appearance of artists recorded by River North. Brown allegedly confirmed over the phone that all four artists would appear at the Barnhill Arena in Fayetteville. Trial testimony supports E & F's contention that River North knowingly misrepresented Bernard's appearance and the Don Henley Band's existence. This is fraudulent conduct, intended to induce commercial activity within the forum state. The fact that River North retained Entertainment Artists as its booking agent does not change the tortious character and foreseeable consequences of those acts. "Under the circumstances, petitioners must 'reasonably anticipate being haled into court [in Arkansas]' to answer for the truth of the statements made . . .." Calder, 465 U.S. at 790, citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297. We see no unfairness in the assertion of jurisdiction over River North limited to the cause of action arising out of this conduct.

At the close of E & F's case in chief, River North moved for judgment as a matter of law, asserting that E & F's evidence of liability and damages was insufficient. The District Court denied the motion. River North renewed the motion following entry of judgment. We first address River North's arguments with regard to liability.

To state a claim for fraud a plaintiff must prove: 1) the defendant made a false representation of material fact; 2) the defendant knew or believed the representation to be false, or had no sufficient basis of information to make it; 3) the defendant intended to induce the plaintiff to act in reliance upon the misrepresentation; 4) the plaintiff justifiably relied on the representation; and 5) the plaintiff sustained damages as a result. Fidelity Mortgage Co. v. Cook, 307 Ark. 496, 499-500, 821 S.W.2d 39, 42 (1991).

River North argues that E & F failed to present sufficient evidence at trial that E & F relied on any statements by River North in entering the contract with Entertainment Artists. River North argues that it was not a party to the contract between E & F and Entertainment Artists, and that Finley had no contact with anyone at River North until several days after the contract was signed. Thus, River North asserts, a jury could not reasonably have found that it misrepresented any fact to E & F on which the latter could have relied in contracting with Entertainment Artists.

E & F's theory of the case was that Entertainment Artists and River North were joint tortfeasors in perpetrating a fraud. Finley testified that he was directed by Dan Wojcik to contact Michelle Brown at River North's Nashville office to obtain promotional materials and coordinate interviews with the River North artists performing in the Cetera show. Finley testified that when he contacted Brown, she confirmed that Bernard and the Don Henley Band would appear. Al Zar, an experienced concert promoter in Joplin, Missouri, from whom Finley learned of the opportunity to promote

the Cetera concert and who promoted the concert himself, corroborated Finley's testimony about Brown's misrepresentations. Finally, E & F asserted at trial that since River North had hired Entertainment Artists to promote River North artists, misrepresentations made by Dan Wojcik could be imputed to Joe Thomas and River North.[4]

We review de novo a District Court's denial of a motion for judgment as a matter of law. We consider whether the evidence, viewed in the light most favorable to the non-moving party, is sufficient to support the jury's verdict. See Haynes v. Bee-Line Trucking Co., 80 F.3d 1235, 1238 (8th Cir. 1996).

E & F presented evidence sufficient to establish fraud with regard to the statements Finley alleged Brown made to him confirming the cast for the Cetera show. On cross-examination, River North's lawyer elicited the following testimony from Dan Finley:

> Q: Did Michelle Brown ever tell you, I mean directly tell you that Crystal Bernard was confirmed to appear on that concert tour and that she was confirmed to appear in Fayetteville, Arkansas, on October 27th of 1995?

---

[4]On appeal, River North advances the theory that Joe Thomas acted in his capacity as Peter Cetera's agent/manager, not as President of River North, in negotiating with Entertainment Artists to be the booking agent for the show. River North argues that it therefore should not be accountable for any misrepresentation Thomas may have made to Entertainment Artists or to anyone else. This assertion was not made at trial, and the evidence supports a finding that Thomas acted on behalf of River North in securing Entertainment Artists as the booking agent for Cetera and Bernard, both of whom were signed with River North. For instance, on October 18, 1995, Joe Thomas faxed a letter to Dan Wojcik on River North Records stationery informing him that Crystal Bernard was unavailable to perform with Cetera. Michelle Brown was copied on the letter.

A: Yes, she did. In conversations in the past, yes, she did. When I first got in touch with her, I explicitly put the four out there and she said that as far -- she agreed with it and told me she would send the promotional material.

Q: Did [Brown] tell you that Crystal Bernard was confirmed?

A: Yes, she said Crystal Bernard was part of the show and she would send me the promo material on that but she'd have to see what she could find on Don Henley Band but she was going to send on Crystal.

Tr. 168.

Brown denied making those statements in an affidavit, but this was a credibility question for the jury. From this evidence, a jury reasonably could have determined that Finley was justified in relying on Brown's statements, since Entertainment Artists and River North were engaged in a joint effort to promote Cetera, Bernard, and the label. A jury could also reasonably have determined that Finley relied on Brown in continuing to spend his time and E & F's resources promoting the concert. Moreover, Al Zar's testimony supported E & F's claim that Michelle Brown worked with promoters by providing not general promotional materials, but materials tailored specifically for the Cetera concerts to take place in Fayetteville and Joplin. We cannot, therefore, say that there was insufficient evidence for the jury's verdict. We affirm the decision of the District Court denying River North's motion for judgment as a matter of law.

IV.

We now turn to River North's claim that E & F failed to prove it suffered losses of $15,182 in out-of pocket expenses and $70,000 in future profits awarded by the jury. River North does not contest that E & F spent the $15,182 promoting the concert. Rather, it argues that the money was provided by E & F's financier, Tony Vaccaro, and

that E & F failed to offer evidence that Mr. Vaccaro expected repayment. Whether or not the money came from Vaccaro, and whether or not he had a right of action to recover the money from Finley and Eby, are issues that seem beside the point. The fact is inescapable that Finley and Eby had this money, from whatever source, expended it on the intended concert, and no longer have it. That is enough to give them a right of action.

River North next challenges the jury's award for loss of future earning ability. River North contends that E & F had no reputation to begin with, because it had not promoted a major successful concert in the past. River North draws our attention to evidence at trial that ticket sales were very poor even before the news broke about Bernard and the Don Henley Band, and that this was all a short time before the concert. Thus, River North asserts, E & F's promotion of the Cetera concert was destined to fail on its own accord, and E & F cannot be awarded damages on this shaky foundation. It further argues that testimony of individuals in the music promotion business, stating that they would consider working with E & F again, undermines E & F's contention that its reputation was damaged. E & F points to evidence that it asserts contradicted River North's depiction of the Cetera concert promotion as incompetent, and to evidence it introduced that E & F's reputation in the music industry had suffered.

As previously noted, supra at page 8, when we review the denial of a motion for judgment as a matter of law, we consider whether the evidence, viewed in the light most favorable to the non-moving party, is sufficient to support the verdict of the jury. The standard applied in making this review is set by federal law. We may, however, refer to state cases that we find helpful by way of analogy. (We know of no difference between the federal-law standard and the standard applied by Arkansas state courts.) In Jim Halsey Co. v. Bonar, 284 Ark. 461, 683 S.W.2d 898 (1985), the Arkansas Supreme Court stated that proof of future profits requires "a reasonably complete set of figures, and [the complaining party must] not leave the jury to speculate as to whether there could have been any profits." Id. at 468 (citation omitted). Halsey also

involved a claim by a concert promoter against a booking agent who misrepresented that a certain performer would appear at the promoter's show. The plaintiff promoter, as well as other local promoters, testified that the plaintiff's reputation had been damaged. Some testified that they would not hire plaintiff again. A local promoter further testified to the calculation of the amount of income the plaintiff would lose as a result of his tarnished reputation. The witness mentioned a variety of factors necessary for calculating lost future profits, including the number of concerts a promoter could reasonably expect to put on in a year, the number of seats in an arena, the average ticket price, reasonable ticket sales based on an average vacancy rate, and concert expenses. Another witness testified as to the present-value calculation of that annual income over various time periods. The Court held that this was sufficient evidence to support the jury's award.

As in Halsey, E & F offered evidence that its reputation had suffered from the failure of Bernard's scheduled performance to materialize. Al Zar testified that while his own reputation was damaged by the misrepresentations attributed to him and Finley in their respective markets, such accusations of fraud would be especially devastating to young promoters such as Finley and Eby. Zar was asked "what [does this do] to a young fledgling promotion business such as E & F Enterprises?" He answered "[d]evastating. It wipes him out before he gets started." Tr. 499-500. He was then asked, "[w]hat is your opinion with regard to the impact that this has had on E & F Enterprises?" He stated "[i]t was devastating. Put it back to ground zero." Tr. 502. Zar also explained the importance for a promoter of building a solid reputation, and stated that Finley had been establishing his reputation with the University of Arkansas, which had warmed to the idea of working with E & F to promote shows there. Zar explained:

> [Fayetteville and the University are] a market I would like to be promoting shows in. It's right down the road from me. But Dan had

done the footwork and the legwork to get in with the University and be able to create that rapport that you have to do to get that first show going.

Tr. 501.

Gene Fitch stated that while he believed Finley to be an honorable person, there would still be some hesitancy on the University's part to work with him. He also asserted his belief that Finley's credibility had been adversely affected. Dale Daniels, regional general manager for Gulf Star Communications, a conglomerate of radio stations in eastern Arkansas, testified that Gulf Star had agreed to advertise the concert heavily. Daniels stated that while he would be willing to talk with E & F about another business endeavor, he believed that its reputation in the music industry had been damaged. Finally, Finley testified that after the news was out about Bernard, he received the "cold shoulder" from some corporate sponsors who had originally been receptive to his work as a promoter. Moreover, he stated that although he believed some people would still be willing to work with him, he had lost his financing because of the dissolved concert.

River North's evidence that E & F's promotion of the Cetera concert was destined to be unsuccessful is damaging. But Finley testified that his strategy was to "blitz" the market in the last week with advertising, and to follow through on block sales of tickets that he had arranged with a number of community businesses, churches, and other organizations. Finley testified that because of the news about Bernard and the Don Henley Band, the concert was canceled at the time the advertising blitz was to begin. This testimony, in combination with the evidence about E & F's reputation's being tarnished, is sufficient for a jury reasonably to have believed that E & F suffered a loss.

Finally, Al Zar testified about the amount of money a concert promoter could make, with access to a facility like Barnhill Arena in Fayetteville. He stated that in a

7000-seat building like Barnhill, with six to eight profitable shows per year, a promoter could earn $8,000 to $12,000 per show and "as high as a hundred thousand dollars a year." Tr. 498, 504. He described how it takes time to build a rapport with the venue and to attract more popular artists.

The jury awarded E & F $70,000 for its loss of future earning ability. In light of the evidence of E & F's damaged reputation at a crucial juncture in its business life, the jury was provided with a sufficient basis from which it could reasonably arrive at this award of damages.

Last, we address River North's challenge of the jury's $10,000 award to E & F for punitive damages. The jury found River North liable for fraud. Punitive damages are appropriate under these circumstances, and the award is not excessive.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-13-