**AVIVA LIFE AND ANNUITY COMPANY, Plaintiff,**

v.

**Jeffrey S. GOLDSTEIN, Defendant.**

**No. 4:10–cv–129 RP–TJS.**

United States District Court,
S.D. Iowa,
Central Division.

July 13, 2010.

John T. Clendenin, Mark Allen Schultheis, Nyemaster Goode West Hansell O'Brien PC, Des Moines, IA, for Plaintiff.

Jeffrey S. Goldstein, Houston, TX, pro se.

## ORDER ON MOTION TO DISMISS

ROBERT W. PRATT, Chief Judge.

Before the Court is a Motion to Dismiss for Lack of Jurisdiction and Improper Venue (hereinafter "Motion to Dismiss"), filed by Defendant, Jeffrey Goldstein ("Goldstein"), on May 18, 2010. Clerk's No. 6. Plaintiff, Aviva Life and Annuity Company ("Aviva"), filed a Resistance to the Motion to Dismiss on June 1, 2010 (Clerk's No. 8), and a Supplemental Brief in Support of Resistance on June 11, 2010 (Clerk's No. 9). Goldstein filed a Reply on June 11, 2010. Clerk's No. 10. The Court heard oral arguments via telephone on June 25, 2010. Clerk's No. 13. The matter is fully submitted.

## I. BACKGROUND

This dispute revolves around a life insurance policy issued by Aviva to Goldstein. *See generally* First Am. Compl. In February and March 2009, Goldstein went through the process of applying for a life insurance policy from Aviva, which was issued on or about March 14, 2009 and Goldstein received on April 1, 2009 (hereinafter "Policy"). Clerk's No. 8–1 (Martin Aff.) ¶¶ 2–7; First Am. Compl. ¶ 6. Goldstein sent Aviva three quarterly payments before Aviva rescinded the Policy in February 2010. *Id.* ¶ 8; First Am. Compl. ¶ 17. After the rescission, on February 15, 2010, Goldstein sent a letter to Aviva denying Aviva's assertion that he made intentional material misrepresentations in his application materials, requesting reinstatement of the Policy, and stating his intention to institute legal proceedings against Aviva if his policy was not reinstated in thirty days. Clerk's No. 8–1 at 21–22.

On March 24, 2010, Aviva filed the present action, pursuant to 28 U.S.C. § 2201, seeking a declaration that it has a legal right to rescind the Policy based on misrepresentations and concealments of materials facts in Goldstein's application, and that the Policy has been rescinded and is void *ab initio*. First Am. Compl. ¶¶ 7–12, 20. Aviva alleges that it is an Iowa corporation and Iowa citizen with its principal place of business in Polk County, Iowa, and that Goldstein is a citizen of the State of Texas. *Id.* ¶¶ 1, 2, 6. Aviva asserts that the amount in controversy, without interest and costs, exceeds the sum or value required for federal diversity subject matter jurisdiction, pursuant to 28 U.S.C. § 1332, and that venue is proper in this Court, pursuant to 28 U.S.C. § 1391(a). *Id.* ¶¶ 3, 4.

Goldstein now moves to have this action dismissed under Federal Rule of Civil Procedure 12(b)(2) on the basis that he has insufficient contacts with the State of Iowa to warrant personal jurisdiction over him, and under Rule 12(b)(3) for improper venue. In the alternative, Goldstein requests the Court transfer the action to the United States District Court for the Southern District of Texas, Houston Division.

## II. LAW AND ANALYSIS

### A. *Motion to Dismiss for Lack of Personal Jurisdiction*

The Court begins by considering Goldstein's objections to personal jurisdiction. Goldstein argues that his contacts with

Aviva in Iowa are insufficient to subject him to personal jurisdiction in Iowa. Def.'s Mot. to Dismiss at 8–11. Goldstein notes that he did not complete any portion of the Application on the Policy in Iowa, never traveled to Iowa, and never spoke to Aviva in Iowa. *Id.* at 10. Instead, he met with an independent insurance agent, Mr. B.L. Nelcon ("Nelcon"), in Houston, Texas, who suggested a life insurance policy from Aviva. Tr. at 1–2.[1] Nelcon filled out a form application, which Goldstein signed, and Nelcon submitted the application to Aviva. *Id.* at 2. Nelcon then contacted Goldstein to inform him that a medical practitioner would be visiting Goldstein at Goldstein's home for a medical exam. *Id.* at 3. After the medical exam, Aviva issued the Policy. *Id.* Goldstein argues that his contacts with Iowa are unsubstantial and observes that none of the alleged "concealments" or "misrepresentations" took place in Iowa. *Id.*; Def.'s Mot. to Dismiss at 9–10. In addition, Goldstein argues that Texas is the "place of contractual performance" since he is a Texas resident; Aviva's policies, applications, and rates in Texas are governed by Texas law; and the Policy permits him to submit any "dispute" or question about the Policy to the Texas Department of Insurance. Tr. at 3; Def.'s Mot. to Dismiss at 10–11.

In resistance, Aviva argues that, while the formation of a contractual relationship does not necessarily establish suffi-cient minimum contacts to support personal jurisdiction, in the case at bar, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" indicate that Goldstein purposefully established minimum contacts with Iowa. *See* Pl.'s Resistance at 7–8 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The emphasis of Aviva's argument is that because Goldstein's application and other materials were submitted to Aviva in Iowa and because the Policy contemplated an on-going relationship between Aviva and Goldstein over an extended period of time, Goldstein should have reasonably anticipated being haled into an Iowa courtroom. Tr. at 5. In support of this assertion, Aviva has submitted two affidavits by Marilyn Martin, a Lead Analyst in the Insurance Administration Division of Aviva, and copies of various documents submitted by Goldstein when applying for the Policy. Clerk's Nos. 8–1, 9–1. The materials submitted by Aviva show contacts by Goldstein with Aviva in Iowa that can be placed in three categories: (1) the submission of application materials to Aviva in Iowa in pursuit of life insurance (Pl.'s Resistance at 2–3; Pl's Supp. Resistance at 1–2);[2] (2) three quarterly payments sent to Aviva in Iowa (Pl.'s Resistance at 3); and (3) a letter to

---

1. All references to the transcript are to the Court's unedited RealTime transcript provided by the Court Reporter.

2. Aviva contends that Goldstein signed and submitted the following documents to Aviva in Des Moines, Iowa: two Applications for Life Insurance; a Beneficiary Designation Form; an Application for Insurance Medical Exam; a Policy Illustration; an Amendment to Application for Life Insurance; a Disclosure Statement for Accelerated Benefit Rider; a Policy Delivery Receipt; two Financial Worksheets and a Financial Questionnaire; two Summary Descriptions of Contractual Premium Provisions; two Disclosure Statement for Accelerated Benefit Riders; two Supplemental Information Questionnaires; an Application for Insurance Non–Medical; two Notices related to replacement of life insurance or annuities; and a TeleApp Application for Life Insurance. Pl.'s Resistance at 2–3; Pl's Supp. Resistance at 1–2. In addition, Goldstein participated in a telephonic interview which was recorded and submitted to Aviva in Des Moines. Pl.'s Supp. Resistance at 2.

Aviva contesting the rescission of the Policy (*Id.;* Clerk's No. 8–1 at 21–22).

Once a defendant makes a motion challenging personal jurisdiction, "[t]he plaintiff bears the burden of proving facts supporting personal jurisdiction." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.,* 607 F.3d 515, 518 (8th Cir.2010) (citing *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1073 (8th Cir.2004)). When considering a motion to dismiss for lack of personal jurisdiction, the Court will review "the affidavits and exhibits presented with the motions and in opposition thereto," as well as the pleadings. *Id.* (quoting *Dever,* 380 F.3d at 1072). "To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." *Digi–Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir.1996). The Court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. *Id.*

A federal court may assume personal jurisdiction over a nonresident defendant to the extent permitted by the forum state's long-arm statute and the Federal Constitution. *See Dever,* 380 F.3d at 1073. Iowa's long-arm statute "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution." *Wells Dairy,* 607 F.3d at 518 (quoting *Hammond v. Fla. Asset Fin. Corp.,* 695 N.W.2d 1, 5 (Iowa 2005)); *see also* Iowa R. Civ. P. 1.306. For this reason, the Court's analysis is limited to the Defendant's constitutional right to due process.

A defendant's constitutional right to due process "requires 'minimum contacts' between the non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see also Burger King,* 471 U.S. at 474, 105 S.Ct. 2174. The baseline for minimum contacts is "some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 254, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Clune v. Alimak AB,* 233 F.3d 538, 542 (8th Cir.2000) (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174). "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir.1994) (quoting *Soo Line R.R. v. Hawker Siddeley Can., Inc.,* 950 F.2d 526, 528 (8th Cir. 1991)). Contacts for the purpose of assessing personal jurisdiction are those that "proximately result from actions by the defendant *himself,*" and may include "commercial activities [that] are 'carried on in behalf of an out-of-state party.'" *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)), 471 U.S. at 480 n. 22, 105 S.Ct. 2174; *see also Digi–Tel Holdings,* 89 F.3d at 523–24 ("In determining whether 'minimum contacts' exist, contacts with the forum state that are made *on behalf* of the defendant by others may be considered.").

The Eighth Circuit has set forth five factors to guide courts in a personal jurisdiction inquiry: "(1) the nature and quality of [a defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum

state in providing a forum for its residents; and (5)[the] convenience of the parties." *Dever*, 380 F.3d at 1073–74 (quoting *Burlington Indus.*, 97 F.3d at 1102). The Court is to give significant weight to the first three factors, which are considered the "primary factors." *Dever*, 380 F.3d at 1073–74; *see also Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir.1995). The third factor is particularly relevant in cases, such as the present action, where there is an assertion of specific jurisdiction, that is, in situations where the plaintiff asserts that the injury giving rise to the lawsuit occurred in or had some connection with the forum state.[3] *Dever*, 380 F.3d at 1073–74 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

 When a plaintiff argues that specific jurisdiction exists, at a minimum, the Court considers the nature and quality of the contacts and the relation of the cause of action to the contacts. *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 712 (8th Cir.2003). Here, Aviva's claim, the request for a declaration that the Policy is rescinded and void *ab initio* based on material misrepresentations in Goldstein's application for the Policy, arises directly from the contacts between Goldstein and Aviva in Iowa. Thus, the specific jurisdiction doctrine is applicable, and the Court must determine if the nature and quality of contacts, as well as the other factors, indicate that the exercise of personal jurisdiction comports with due process.

Both parties cite the Supreme Court's decision in *Burger King* in their arguments regarding the nature and quality of contacts. 471 U.S. at 478, 105 S.Ct. 2174. In *Burger King*, the Supreme Court noted that personal jurisdiction in a contractual dispute does not "turn on 'mechanical' tests or on 'conceptualistic ... theories of the place of contracting or performance,'" but rather, requires a "highly realistic approach." 471 U.S. at 478, 105 S.Ct. 2174 (quoting *Int'l Shoe*, 326 U.S. at 319, 66 S.Ct. 154). Accordingly, a reviewing court must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing...." *Id.* at 478–49, 105 S.Ct. 2174. In *Burger King*, the Court concluded that personal jurisdiction existed, despite the fact the nonresident defendant had not physically entered the forum state, because: the defendant

---

**3.** The personal jurisdiction inquiry may also be treated as a two-part inquiry in which a court first considers the existence of minimum contacts, and then, "[i]f a court determines that a defendant has minimum contacts with the forum state, it may [ ] consider 'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Dever*, 380 F.3d at 1073 (quoting *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174, quoting in turn *Int'l Shoe*, 326 U.S. at 320, 66 S.Ct. 154).

The second phase of analysis is sometimes referred to as either a "fair play and substantial justice" or "reasonableness" inquiry. *Pope v. Elabo GmbH*, 588 F.Supp.2d 1008, 1015 (D.Minn.2008). Despite a subtle difference in the structure of the analysis under the Eighth Circuit five factor approach and the two-step minimum contacts—reasonableness approach, the five factor approach "incorporates the notions of both 'minimum contacts' and 'fair play and substantial justice,'" and the Court's conclusion would be the same. *Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 524 (8th Cir.1992) (citing *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373–74 (8th Cir.1990)); *see also Pope*, 588 F.Supp.2d at 1017–18 (noting that "[t]he Eighth Circuit has not explained precisely how the [five] factors relate to the two distinct analyses—minimum contacts and reasonableness—required by the Supreme Court," but that it appears that "the first two Eighth Circuit factors go primarily to whether minimum contacts exist between the defendant and the forum," and "the fourth and fifth factors go to the reasonableness of exercising jurisdiction").

"reached out" to the forum state to enter into a franchising agreement with the plaintiff that "envisioned continuing and wide-reaching contacts" with the plaintiff in the forum state; the plaintiff and the defendant had engaged in extensive telephone communications; the franchising agreement provided that the franchise relationship was established in the forum state and was governed by the law of that state; and the defendant was a sophisticated businessman and there was no unfairness in the business dealings that would make the assertion of personal jurisdiction unconstitutional. *Id.* at 479–85, 105 S.Ct. 2174.

Compared to *Burger King*, the facts at bar present a much closer case. Nonetheless, several aspects of the contractual negotiation and relationship persuade the Court that Goldstein's conduct and connection with Iowa is such that he could reasonably anticipate being haled into court here. As an initial matter, the application forms that were signed by Goldstein were submitted on his behalf to Iowa. While the act of signing these forms took place in Texas, Goldstein's independent insurance agent reached out to Aviva in Iowa to submit the forms. Thus, Aviva has presented facts that, taken in the light most favorable to Aviva, show that Goldstein initiated the contractual relationship between himself and Aviva.

Furthermore, in reaching out to Aviva for a life insurance policy, Goldstein established a long-term, on-going contractual relationship with Aviva that he sought to maintain through quarterly payments and a letter contesting the rescission of the Policy. Aviva details several circumstances in which Goldstein would have been required to contact Aviva's headquarters in Des Moines, Iowa, i.e., if Goldstein had wanted to send a written notice of surrender, request a loan on the Policy, make a complaint or request information,

or request other changes in the Policy. Pl.'s Resistance at 3–5. The fact that Aviva terminated the contractual relationship approximately a year after its formation does not lessen the reasonable expectation that when Goldstein purchased the Policy from Aviva, he might be haled into court in Iowa in the event of a dispute. Notably, the Court has not located a single case in which a defendant who initiated an ongoing, long-term contractual relationship with a plaintiff is not subject to personal jurisdiction in the plaintiff's state. *See, e.g., McGee*, 355 U.S. at 223, 78 S.Ct. 199 (holding that the Due Process Clause permits a California court to exercise personal jurisdiction over an insurance company that assumed the insurance obligations from the plaintiff's former insurer such that the out-of-state defendant provided a single life insurance policy to a California resident); *St. Jude Med. Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 593 (8th Cir.2001) (holding that personal jurisdiction over an out-of-state defendant satisfied due process where the defendant initiated contact with the plaintiff and maintained interstate communications to obtain the agreement, and where there was evidence of a long-term, ongoing business relationship); *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995) (considering as one factor in favor of jurisdiction the fact that the defendant consummated a business relationship with the plaintiff that was initiated by a person acting on behalf of the defendant); *cf. Porter v. Berall*, 293 F.3d 1073, 1075 (8th Cir.2002) (noting that "the defendants did not solicit the plaintiffs' business when holding there was a lack of personal jurisdiction").

Finally, the Eighth Circuit's application of the "effects" test in *Finley v. River North Records, Inc.*, 148 F.3d 913, 914 (8th Cir.1998), further persuades the Court that Aviva has made a prima facie case of

personal jurisdiction in Iowa. The Supreme Court approved the "effects" test in *Calder v. Jones*, when it held that a California court could exercise jurisdiction over two Florida newspapermen in a libel action brought by a California resident who was the subject of a story published in a nationally circulated paper because California was the focal point both of the allegedly libelous story and of the harm suffered. 465 U.S. 783, 788–89 (1984). In *Finley*, the Eighth Circuit applied the "effects" test and held that an out-of-state defendant was amenable to personal jurisdiction in Arkansas when the plaintiff claimed that the defendant committed fraud in inducing a business arrangement by making misrepresentation in various communications sent into Arkansas. 148 F.3d at 915–16. The fact that the defendant acted through an agent did "not change the tortious character and foreseeable consequences of those acts." *Id.* at 916. Aviva's assertions of fraudulent misrepresentations in the present case parallel the plaintiff's claims in *Finley*, and the same reasoning, that the allegedly tortious acts were directed into Iowa despite the use of an agent as an intermediary, applies. Thus, the Court concludes that the nature and the quality of Goldstein's contacts with Aviva in Iowa are such that Goldstein could reasonably anticipate being haled into court in Iowa.

As to the other factors, the Court notes that the number of contacts between Goldstein and Aviva in Iowa were limited to the various application materials, three quarterly payments, and one single letter. Though this limited number of contacts makes the Court pause, the Court finds that the nature and quality of Goldstein's contacts in applying for the Policy, and his efforts to maintain the long-term insurer-insured relationship, were sufficient to create a substantial connection to Iowa in the limited time since Goldstein applied for and received the Policy. In addition, Iowa has an interest in providing a forum for resident businesses that have issued long-term insurance policies that may be void due to material misrepresentations by the applicant. Finally, the Court notes that litigation in Iowa will be convenient to Aviva, whereas litigation in Texas will surely be more convenient to Goldstein. Both Aviva and Goldstein assert that they have relevant witnesses and papers in Iowa and Texas, respectively. The Court finds that this final factor is neutral in the analysis.

The Court is not persuaded by Goldstein's argument that personal jurisdiction in Iowa conflicts with Goldstein's due process rights because the Policy's primary place of execution is Texas and because it is subject to Texas state regulation. While these facts certainly create a substantial connection between the Policy and Texas, the Policy's connection to Texas does not undermine Goldstein's connection to Iowa.[4]

---

4. The Supreme Court has noted the potential danger of applying the personal jurisdiction doctrine too broadly, i.e., where it might "result in the exercise of jurisdiction over 'out-of-state consumers to collect payments due on modest personal purchases' and would 'sow the seeds of default judgments against franchisees owing smaller debts.'" *Burger King*, 471 U.S. at 486, 105 S.Ct. 2174 (citing *Burger King Corp. v. MacShara*, 724 F.2d 1505, 1513 (11th Cir.1984)); *see also id.* ("Just as the Due Process Clause allows flexibility in ensuring that commercial actors are not effectively judgment proof for the consequences of obligations they voluntarily assume in other States, so too does it prevent rules that would unfairly enable them to obtain default judgments against unwitting customers." (internal citations and quotations marks omitted)). The Court does not think that this is such a case given Goldstein's active part in establishing the relationship with Aviva, the long-term nature of the contractual relationship envisioned in the Policy, and the significant amount at controversy in this case.

Nor is the Court persuaded by the numerous Fifth Circuit cases cited by Goldstein. The majority of these cases are easily distinguishable from the case at bar as they either address the issue of personal jurisdiction under a stream of commerce theory, or involve contractual disputes in which the plaintiffs were unable to demonstrate that the defendants purposefully availed themselves of the privilege of conducting activities within the forum state.[5] Instead, the Court believes that facts presented in *Lewis v. Fresne,* 252 F.3d 352, 358–59 (5th Cir.2001), a Fifth Circuit case also cited by Goldstein, are more analogous to the present case. In *Lewis,* the Fifth Circuit held that sufficient minimum contacts justified personal jurisdiction over two out-of-state defendants in Texas, where the defendants were accused of intentionally defrauding the plaintiff by way of misrepresentations in interstate communications during a business transaction. *Id.* at 358. The Fifth Circuit cited prior case law holding that "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted," and "that '[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.'" *Id.* at 359 (citing *Brown v. Flowers Indus.,* 688 F.2d 328, 332–33 (5th Cir.1982) and quoting *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 213 (5th Cir.1999)). This precedent suggests that a district court in the Fifth Circuit would likely conclude that the exercise of personal jurisdiction in Iowa comported with due process in the present case.

For the reasons stated above, the Court finds that Aviva has made a sufficient showing that Goldstein "deliberately" engaged in significant activities within Iowa that created "continuing obligations" between himself and Aviva and, thus, is subject to personal jurisdiction in Iowa.

### B. *Motion to Dismiss for Lack of Venue*

■■■ Federal Rule of Civil Procedure 12(b)(3) provides that a party may make a pre-answer motion to dismiss an action that is not filed in the proper venue. Aviva asserts in the Complaint that venue is proper in this Court, pursuant to 28 U.S.C. § 1391(a), which states:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant

---

5. For example, in *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1029–30 (5th Cir.1983), the Fifth Circuit Court of Appeals held that the out-of-state business had not purposefully availed itself of the privilege of conducting business in the forum state merely by agreeing to purchase goods that were purchased in the forum state and sending payments to the forum state. *See also Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 778 (5th Cir.1986) (finding that the existence of a contract between oil producers regarding an Oklahoma drilling project, partial payment, and communications regarding the contract were insufficient contacts to support specific jurisdiction in Texas, but concluding that general jurisdiction over the defendant existed); *Stuart v. Spademan,* 772 F.2d 1185, 1194 (5th Cir.1985) (observing, after extensively discussing *Hydrokinetics,* that "[t]he random use of interstate commerce to negotiate and close a particular contract, the isolated shipment of goods to the forum at the instigation of the resident plaintiffs, and the mailing of payments to the forum do not constitute the minimum contacts necessary to constitutionally exercise jurisdiction over [a nonresident defendant]").

is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Goldstein argues that Aviva cannot rely on any § 1391(a)(1), (2), or (3), since: (1) Goldstein is not a resident of Iowa; (2) a substantial part of the alleged events giving rise to Aviva's claims occurred in Texas, not Iowa; and (3) the action could be brought in Texas. Def.'s Mot. to Dismiss at 12–13. Aviva counters that venue is proper pursuant to § 1391(a)(2) since the issuance of the Policy took place in Iowa. Pl.'s Resistance at 12–13.

Several districts may qualify as a site of "substantial" activities for the purposes of § 1391(a)(2). *Setco Enters. Corp. v. Robbins*, 19 F.3d 1278, 1280–81 (8th Cir.1994) ("[The court] no longer ask[s] which district among two or more potential forums is the "best" venue. . . . Rather, [the court] ask[s] whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts."). Aviva received and reviewed Goldstein's application materials and issued the disputed Policy based on the application materials in the Southern District of Iowa. These activities have a substantial connection to Aviva's claim that the Policy is void *ab initio* because of material misrepresentations in the application materials. Therefore, the Southern District of Iowa is a proper venue for this declaratory action.

### C. *Motion to Transfer*

In the alternative to dismissal, Goldstein seeks to have Aviva's claims against him transferred to the Southern District of Texas, Houston Division. Title 28, U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The idea behind § 1404

is that where a 'civil action' to vindicate a wrong-however brought in court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Cont'l Grain Co. v. The FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). In deciding a motion to transfer venue, the court must consider: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir.1997). Other factors that may affect the "balance of convenience" include "the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony; the accessibility to records and documents; the location where the conduct complained of occurred; and the applicability of each forum state's substantive law." *Id.* at 696. Relevant factors affecting the "interest of justice" include: "(1) Judicial economy; (2) The plaintiff's choice of forum; (3) The comparative costs to the parties of litigating in each forum; (4) Each party's ability to enforce a judgment; (5) Obstacles to a fair trial; (6) Conflict of law issues; and (7) The advantages of having a local court determine questions of local law." *Id.* The Court gives considerable deference to the plaintiff's choice of forum, and it is defendant's burden to demonstrate that a transfer of venue is warranted. *Id.* at 691, 695.

Goldstein argues that it would be burdensome for him to litigate the case in Iowa, whereas it is reasonable for Aviva to litigate in Texas. Def.'s Reply at 10. He notes that Aviva has a presence in Texas since it licensed to do business in Texas, whereas he has no physical presence in Iowa. *Id.* Goldstein also notes that the decision to rescind the policy emanates from information provided by Goldstein to his agent in Texas regarding Goldstein's

medical conditions, and that the insurance agent and the treating doctors, as well as Goldstein, reside in Houston, Texas. *Id.* In addition, he asserts that Texas has a public interest in having the insurance dispute resolved in Texas, where the insured resides, particularly since Aviva is licensed and governed by the Texas Department of Insurance. *Id.* at 10–11. In opposition to a transfer, Aviva argues that all of its witnesses are in Iowa, and that transfer should not be granted under 1404(a) because the transfer would simply shift the inconvenience from one party to the other. Pl.'s Resistance at 14.

 Regarding the convenience of the parties, Goldstein has offered no support for his assertion that Aviva has a physical presence in Texas. The mere fact the Aviva is licensed to provide insurance in Texas does not demonstrate that Aviva has any offices in Texas, or that it will be any less burdensome for it to travel to Texas to litigate the dispute than it will be for Goldstein to come to Iowa. Accordingly, the Court finds that convenience of the parties is at equipoise, since either one party or the other will have to travel an equal distance to a forum other than its state of citizenship.

The convenience of the witnesses, however, weighs in favor of a transfer to Texas. As Goldstein notes, Aviva's central assertion in this case is that Goldstein made material misrepresentations regarding his health on the insurance application, and proof of this claim will require extensive testimony from Goldstein's insurance agent and the doctors who conducted his health assessments in Texas. Requiring these witness to travel to Iowa from Texas

would place a significant burden on them. Furthermore, since they reside more than 100 miles from any location in Iowa, their attendance can not be assured by the subpoena powers set forth in Federal Rule of Civil Procedure 45(b)(2)(B). While Aviva asserts that it will produce Iowa witnesses to testify, it has not identified any of these witnesses, nor explained the importance of their testimony. In addition, it is more likely that Aviva can assure that its own employees will appear as witnesses in Texas than it is that the independent insurance agent or treating physicians will appear in an Iowa court.

 Regarding the final consideration, the "interest of justice," the plaintiff's choice of Iowa as a forum favors Iowa.[6] However, this consideration is counterbalanced by the fact that Texas not only has an interest equal to that of Iowa in providing a venue for its citizens' claims (or in this case counterclaims), Texas has an additional interest in regulating the activities of insurance companies doing business in its State. *Cf. McGee,* 355 U.S. at 223, 78 S.Ct. 199 ("It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims."). Based on these considerations, the Court concludes that the interests of justice are in equipoise.

Since the convenience of the witnesses favors transfer to Texas, while the convenience of the parties and the interest of justice are in equipoise, the Court concludes that this action should be transferred to the Southern District of Texas,

---

**6.** The Court is not persuaded by Goldstein's assertion that Aviva's decision to file suit in Iowa was simply a preemptive, procedural maneuver to avoid litigating in Texas. Aviva did not file the action in Iowa immediately after receipt of Goldstein's letter demanding reinstatement, but rather, waited more than a week until after the thirty day deadline set forth by Goldstein had passed. Thus, the Court does not weigh this against the deference given to plaintiff's choice of forum.

Houston Division, where several important witnesses reside or do business.

### III. CONCLUSION

For the reasons stated herein, Goldstein's Motion to Dismiss is DENIED, but his Motion to Transfer is GRANTED. Clerk's No. 6.

IT IS SO ORDERED.